IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TAMARA EPPERSON, ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:16-cv-00050 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CALVIN L. "COTTON" PAYNE, ET AL, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' respective motions to dismiss. [ECF Nos. 15, 17, & 20.] The matter has been fully briefed, and the parties appeared before me on March 21, 2017, to argue their positions on the facts and the law. After due consideration, and for the reasons stated herein, Defendant Stephanie Brinegar-Vipperman's Motion to Dismiss will be granted, Defendants Calvin and Vickie Payne's Motion to Dismiss will be denied, and Defendants Brian Hubbard, Terry Mikels, and Danny Martin's Motion to Dismiss will be granted in part and denied in part.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

Until October 19, 2015, Plaintiffs Tamara, James, Kyle, and Mason Epperson ("Plaintiffs") resided at 4037 Ararat Highway in Patrick County, Virginia ("the property").[2] (Compl. ¶¶ 5–6.) On October 19, Defendants Calvin and Vickie Payne ("the Paynes") purchased the property at a foreclosure auction. (Id. ¶ 8.) After the sale, the Paynes contacted Plaintiffs

---

[1] The facts are taken from Plaintiff's Complaint. As this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] Tamara Epperson is a hospice outreach coordinator, and her husband James works in the information technology field. Mason Epperson is enrolled in college and did not live in the home, but maintained his permanent residence there. Kyle Epperson is school-aged and resided with his parents.

and informed them that they had purchased their home. (Id. ¶ 12.) Mr. Epperson told Mrs. Payne that he and his family had made arrangements to move out of the home, but he requested a few weeks to complete the move. (Id. ¶ 13.) Mrs. Payne agreed to give Plaintiffs some time to complete the move and agreed that they would, at some point in the future, finalize a date by which Plaintiffs would permanently vacate the property. (Id. ¶ 14.) In return, Plaintiffs would provide the Paynes with the opportunity to inspect the home prior to Plaintiffs' moving out. (Id.)

The night of the foreclosure sale, and the night of Mr. Epperson's conversation with Mrs. Payne, Mr. Epperson was awakened by noise outside the property. (Id. ¶ 16.) Mr. Epperson went downstairs and heard voices near his garage. (Id. ¶ 17.) He also observed a white pickup truck leaving the property. (Id.) Mr. Epperson armed himself and waited in the living room for approximately one hour, fearing that whoever had been outside his home would return. (Id. ¶ 18.) No one did, so he returned to bed.

The next morning, Mr. Epperson was at the property while his son, Kyle, was home from school and sick in bed. (Id. ¶ 20.) Again, Mr. Epperson heard voices in the garage. (Id. ¶ 22.) Remembering the commotion from the last night, Mr. Epperson got his shotgun, activated his security system, and proceeded to investigate the voices. (Id. ¶ 24.) Mr. Epperson looked though an interior window into the garage and saw five (5) individuals inside or near the garage. (Id. ¶ 28.) The individuals were later determined to be Defendants Brian Hubbard, Danny Martin, and Terry Mikels, along with Calvin and Vickie Payne. (Id. ¶¶ 28, 31.)

Defendants Hubbard, Martin, and Mikels ("the deputies") were, at the time, investigators with the Patrick County Sheriff's Office. (Id. ¶ 9.) They observed Mr. Epperson through the window and saw that he held his shotgun at the "ready" position. (Id. ¶ 32.) The deputies yelled for Mr. Epperson to put down his shot gun and, once he realized that the deputies were with the Sheriff's Department, he complied. (Id. ¶¶ 33–34.) The deputies, followed by the Paynes,

- 2 -

Case 4:16-cv-00050-JLK-RSB   Document 41   Filed 03/30/17   Page 2 of 19   Pageid#: 269

entered the home, placed Mr. Epperson in handcuffs, patted him down, removed the house keys from his pocket, turned the keys over to the Paynes, and escorted Mr. Epperson to the police car. (Id. ¶ 35.) They also proceeded to search the home. (Id. ¶ 37.) They yelled to Kyle Epperson to come downstairs from his bedroom. (Id. ¶ 38.) Once he was downstairs, the deputies put him in handcuffs at gunpoint and escorted him from the home. (Id.) The deputies told Kyle that the property "was no longer his home and he was no longer permitted to enter or be in it." (Id. ¶ 40.)

The deputies then permitted the Paynes to take possession of the property. Since that time, the Paynes have not returned the property to Plaintiffs. (Id. ¶ 42.)

The deputies transported Mr. Epperson to the magistrate and charged him with three counts of brandishing a firearm. (Id. ¶ 46.) He was thereafter committed to jail until Mrs. Epperson posted his bond several hours later. (Id. ¶ 47.) On January 5, 2017, the court dismissed the charges against Mr. Epperson on Defendant Commonwealth's Attorney Stephanie Brinegar-Vipperman's motion to *nolle prosequi*. (Id. ¶ 52.)

Since October 20, 2015, Plaintiffs have not been permitted to return to the property except with the express permission of the Paynes. (Id. ¶ 51.) The Paynes have prohibited Plaintiffs from retrieving the personal property from the home they were forced to abandon when the deputies removed them at gunpoint. (Id. ¶ 54.) To date, the Paynes still possess thousands of dollars of Plaintiffs' personal property.

Plaintiffs aver that, at some point on October 19 or 20, 2015, the Paynes requested that the deputies assist them in taking possession of the property. (Id. ¶ 56.) When asked by the deputies if they could assist the Paynes, Defendant Stephanie Brinegar-Vipperman told the deputies they could. (Id. ¶ 57.) The Paynes did not obtain a court order pursuant to an unlawful detainer action, and the deputies did not obtain a search warrant.

Plaintiffs brought suit in this Court against Defendants on October 19, 2016. They have alleged: violation of their due process rights, pursuant to 42 U.S.C. § 1983, against the deputies (Count I); violation of their Fourth Amendment rights, pursuant to 42 U.S.C. § 1983, against the deputies (Count II); supervisory liability under 42 U.S.C. § 1983 against Brinegar-Vipperman (Count III); unlawful eviction against all Defendants (Count IV); common-law trespass against the Paynes and the deputies (Count V); common-law conversion against the Paynes and the deputies (Count VI); and malicious prosecution against the deputies (Count VII). All Defendants filed motions to dismiss, and I held on hearing on the motions on March 21, 2017.

II. <u>**STANDARD OF REVIEW**</u>

When a challenge to subject matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject matter jurisdiction is on the plaintiff." <u>Richmond, Fredericksburg & Potomac R. Co. v. U.S.</u>, 945 F.2d 765, 768 (4th Cir. 1991) (citing <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." <u>Id.</u> "The court must grant the motion 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" <u>Little v. Stock Bldg. Supply, LLC</u>, Case No. 4:10-cv-129, 2011 WL 5146179, at *3 (E.D.N.C. Sept. 2, 2011) (quoting <u>Richmond</u>, 945 F.2d at 768). Generally speaking, allegations of Eleventh Amendment immunity, like those raised by Commonwealth's Attorney Stephanie Brinegar-Vipperman, are treated as challenges to subject matter jurisdiction. <u>See, e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 677–78 (1974).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### III. DISCUSSION

#### A. STEPHANIE BRINEGAR-VIPPERMAN

Brinegar-Vipperman is named in Counts III (supervisory liability) and Count IV (unlawful eviction) and, presumably, Plaintiffs have sued Brinegar-Vipperman in both her official and individual capacity. Insofar as Brinegar-Vipperman is sued in her official capacity, the Eleventh Amendment bars recovery.

Pursuant to the Eleventh Amendment, the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state." U.S. CONST. amend. XI. The immunity afforded by this Amendment has been interpreted to extend beyond its literal terms. Specifically, the Supreme Court has interpreted the Eleventh Amendment to bar suits by citizens against their *own* state in federal court. See Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). "It is also well established that even though a State is not named a party to the action, the suit may nonetheless

- 5 -

Case 4:16-cv-00050-JLK-RSB   Document 41   Filed 03/30/17   Page 5 of 19   Pageid#: 272

be barred by the Eleventh Amendment." Id. at 663. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945). Accordingly, Eleventh Amendment immunity may be extended to state agencies considered "arms of the state" and state employees acting in their official capacity. See Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996).

In Ram Ditta v. Maryland National Capital Park & Planning Commission, 822 F.2d 456 (4th Cir. 1987), the Fourth Circuit outlined a nonexclusive, four-part test to determine whether a state official is immune under the Eleventh Amendment. The "most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded." Id. at 457. In fact, "a finding that the state treasury will pay the judgment is usually 'dispositive.'" Harter, 101 F.3d at 339 (quoting Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 47–53 (1994)). In light of the importance of the state treasury factor, the Fourth Circuit held in Bockes v. Fields, 999 F.2d 788, 790–91 (4th Cir. 1993), cert. denied 510 U.S. 1092 (1994), and reiterated in Gray v. Laws, 51 F.3d 426, 433 (4th Cir. 1995), that if the state treasury will pay the judgment, the entity is immune from suit, and the other Ram Ditta factors need not be considered. See Gray, 51 F.3d at 433–34 (citing Bockes, 999 F.2d at 790–91).

In Virginia, the Commonwealth's Attorney is a constitutional officer of the Commonwealth. VA. CONST. art. VII, § 4; Burnett v. Brown, 72 S.E.2d 394, 395 (Va. 1952) ("Attorneys for the Commonwealth are constitutional officers."). The Commonwealth funds a risk management plan for constitutional officers, which is administered by the Department of the Treasury's Division of Risk Management ("Division"). See Va. Code Ann. § 2.2-1839. As this Court has previously stated:

> The plan protects against liability imposed by law for damages against any constitutional officers of the Commonwealth. The Division assumes sole responsibility for plan management, compliance[,] and removal, and the State Compensation Board must approve constitutional officers' participation in the risk management plan. The Division provides for the legal defense of participating entities, and a trust fund is established for payment of claims covered under such plan. Funds are invested into this trust according to Va. Code Ann. § 2.2-1806, which provides for the investment of funds in the state treasury. Thus, the Virginia Department of the Treasury is responsible for paying any judgment that may be awarded in this action, as claims are paid from a trust funded by the state treasury.

Plaster v. Brown, No. 6:05-cv-00006, 2005 WL 3021961, at *3 (W.D. Va. Nov. 9, 2005) (citing Va. Code Ann. § 2.2-1839), adopted with modification, 2006 WL 240866 (W.D. Va. Feb. 1, 2006). Accordingly, because any judgment against Brinegar-Vipperman in her official capacity would be "paid from a trust funded by the state treasury," id., the Eleventh Amendment bars the suit. Accord Blankenship v. Warren Co., 918 F. Supp. 970, 974 n.4 (W.D. Va. 1996) ("The Virginia Constitution creates five state officers which are charged with performing quintessential functions of state government: Commonwealth's Attorney, Treasurer, Commissioner of Revenue, Sheriff, and Clerk of the Court . . . [T]hese officers are . . . state actors and . . . are entitled to immunity pursuant to the Eleventh Amendment.").

Plaintiffs' reliance on Pembaur v. City of Cincinnati and Monell v. Department of Social Services is unavailing. Pembaur has no applicability because, as the Supreme Court noted in that case, "[b]ased upon its examination of Ohio law, the Court of Appeals found it 'clea[r]' that the Sheriff and the Prosecutor were both county officials authorized to establish 'the official policy of Hamilton County' with respect to matter of law enforcement." Pembaur v. City of Cincinnati, 475 U.S. 469, 476 (1986). Because the prosecutor in that case was a local official, not an arm of the state, the Eleventh Amendment had no applicability. Regardless of how similar the facts

- 7 -

Case 4:16-cv-00050-JLK-RSB   Document 41   Filed 03/30/17   Page 7 of 19   Pageid#: 274

of Pembaur are to the case at bar—and the similarities are striking—the considerations of the Eleventh Amendment trump the reasoning of Pembaur.

Likewise, Plaintiffs' attempts to shoehorn their claim into the exception outlined in Monell must be rejected. Generally speaking, "municipalities can be liable for actions of its employees under § 1983; however, they cannot be liable under a theory of *respondeat superior*." Savage v. Cnty. of Stafford, Va., No. 1:09-cv-1328, 2010 WL 2520532, at *4 (E.D. Va. June 16, 2010). Monell permits liability against a **municipality** "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. Brinegar-Vipperman, as Commonwealth's Attorney, "is a constitutional officer and is not an employee or officer of a city or county." Savage, 2010 WL 2520532, at *3 (citing Newport News Fire Fighters Ass'n v. Newport News, 301 F. Supp. 1113, 11116 (E.D. Va. 1969)). "[B]ecause the actions of . . . the Commonwealth Attorney . . . are not attributable to the County, the County cannot be held liable for [her] conduct." Id. Accordingly, Monell does not save Plaintiffs' claims against Brinegar-Vipperman in her official capacity.

Turning to the claims as against Brinegar-Vipperman in her individual capacity, "[t]he principle is firmly entrenched [in the law of § 1983] that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Liability, however, is not premised upon a theory of *respondeat superior*, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372–73 (4th Cir. 1984). In order to state a claim for supervisory liability under § 1983, Plaintiffs must allege:

> (1) that the supervisor had actual or constructive knowledge that [her] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).

Here, Plaintiffs have pled themselves out of this claim. By their own admission, "Defendants Brian Hubbard, Danny Martin, and Terry Mikels were/are investigators for Patrick County Sheriff Dan Smith . . . ." (Compl. ¶ 9.) Nowhere in their Complaint do Plaintiffs allege that the deputies were subordinate to Brinegar-Vipperman in any way, or that she held any authority as their supervisor. Regardless of the arguments put forth in their brief,[3] they have not alleged any facts to sustain the claim that Brinegar-Vipperman was the deputies' supervisor, and thus her "inaction" had no effect on the deputies' action.[4] Count III must fail.

Count IV fails as well. Presumably, Count IV is a claim for unlawful eviction under Va. Code Ann. § 55-225.2, which states, "[i]f a landlord unlawfully removes . . . a tenant from residential premises . . . , the tenant may . . . recover the actual damages sustained by him and reasonable attorney fees."[5] Plaintiffs have alleged that they were tenants under a rental agreement, specifically the oral agreement between Mr. Epperson and Mrs. Payne. See id. § 55-

---

[3] Plaintiffs argue that Brinegar-Vipperman was the "principal" and the deputies were her "agents," which they imply is sufficient to create a claim for supervisory liability. This is doubtful, however, because the "principal/agent" relationship is typically shorthand for recovery under a theory of *respondeat superior*, which § 1983 does not countenance. The courts have been very clear: supervisory liability under § 1983 requires a "supervisor/subordinate" relationship, not merely one acting on behalf of another.

[4] Because she was not the deputies' supervisor, it follows that she had no actual authority to instigate or stop the deputies' allegedly unlawful conduct.

[5] The parties are correct that the Virginia Residential Landlord and Tenant Act ("VRLTA") does not apply. By its terms, the VRLTA does not apply to "[o]ccupancy by a tenant who pays no rent . . . ." Va. Code Ann. § 55-248.5(9).

- 9 -

225.8 (incorporating definitions used in Va. Code Ann. § 55-248.4); § 55-248.4 (defining "rental agreement" or "lease agreement" as "all agreements, *written or oral*, . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises" (emphasis added)). Thus, assuming the removal of Plaintiffs was unlawful, the statute authorizes a civil action against "the landlord" for actual damages. Id. § 55-225.2.

"When the language of a statute is unambiguous, [the court is] bound by the plain meaning of that language. . . . Furthermore, [the court] must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Conyers v. Martial Arts World of Richmond, Inc., 639 S.E.2d 174, 178 (Va. 2007). The Virginia Code defines "landlord" as the "owner, lessor[,] or sublessor of the dwelling unit or the building of which such dwelling unit is a part." Va. Code Ann. § 55-248.4. Because Brinegar-Vipperman was not the "owner, lessor, or sublessor" of the property, a claim under Va. Code Ann. § 55-225.2 will not lie against her. Accordingly, Plaintiffs have failed to state a claim against Brinegar-Vipperman for unlawful eviction, and Count IV should be dismissed as to her.

    B. CALVIN AND VICKIE PAYNE

Calvin and Vickie Payne ("the Paynes") have moved to dismiss Counts IV (unlawful eviction) and V (trespass) of Plaintiffs' Complaint. Plaintiffs have adequately stated both claims against the Paynes.

Regarding the unlawful eviction claim, as stated above, the claim arises under Va. Code Ann. § 55-225.2.[6] In Plaintiffs' Complaint, they allege that they entered into an oral rental agreement with the Paynes to reside at the Ararat Highway property until such time as Plaintiffs

---

[6] The parties are correct that the claim does not arise under the Virginia Residential Landlord and Tenant Act ("VRLTA"), but not for the reasons they assert. Because Plaintiffs did not pay rent to the Paynes, the VRLTA excludes the alleged agreement from its reach. See Va. Code Ann. § 55-248.5(9).

- 10 -

could make different living arrangements. In return, Plaintiffs would permit the Paynes to inspect the property before Plaintiffs vacated it. These terms were allegedly acceptable to and accepted by the Paynes. Thus, under the Virginia Code, Plaintiffs became tenants of the Paynes. See Va. Code Ann. § 55-225.8 (incorporating definitions used in Va. Code Ann. § 55-248.4); § 55-248.4 (defining "rental agreement" or "lease agreement" as "all agreements, *written or oral*, . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises" (emphasis added)).

As tenants, the Virginia Code created a statutory cause of action against the landlords if the landlords "unlawfully remove[d]" Plaintiffs. Id. § 55-225.2. As alleged, Plaintiffs were lawful tenants of the property. If the Paynes removed Plaintiffs—at gunpoint—from the property, such action was a violation of the alleged oral agreement between them. Such an action would amount to an "unlawful removal," and thus Plaintiffs have stated a claim for unlawful eviction under § 55-225.2 against the Paynes.

Even if Plaintiffs had not alleged they were lawful tenants under an oral rental agreement, Plaintiffs would still have stated a claim against the Paynes. "At common law a landlord, entitled to possession of the leased premises which were being wrongfully withheld from him, had the right to make re-entry by such reasonable force as was necessary, short of that which threatened death or serious bodily harm, to regain possession." Shorter v. Shelton, 33 S.E.2d 643, 646 (Va. 1945) (citing Allen v. Gibson, 4 Rand. (25 Va.) 468, 471 (1826)). Here, however, assuming the Paynes were entitled to retake possession of the property, the method they allegedly employed certainly "threatened death or serious bodily harm" to Plaintiffs. As alleged by Plaintiffs, the Paynes arrived, unannounced and with armed assistants, and entered the home without warning. At gunpoint, they had the deputies retrieve the keys from Mr. Epperson's

pocket, and then the deputies trained their guns on Mr. Epperson's son before removing him from the property in handcuffs. Plaintiffs have made out their claim on the facts alleged.[7]

Likewise, because Plaintiffs have adequately alleged that they were tenants pursuant to an oral rental agreement, they have stated a cause of action for trespass against the Paynes. During the term of the tenancy, "the tenant is substantially the owner of the property, having the right of possession, dominion and control over it. Certainly, as a general rule, the lessee must protect himself against trespassers or other wrongdoers who disturb his possession." Hannan v. Dusch, 153 S.E.2d 824, 830 (Va. 1930). This right of possession may be enforced against anyone, including the landlord. See Johnson v. Marcel, 465 S.E.2d 815, 817 (Va. 1996). By leasing the property back to Plaintiffs, the Paynes gave up their right of possession except under specific circumstances.

It is well settled that a landlord, after leasing a residential unit, cannot make unannounced entry into the property at his or her whim. See, e.g., Va. Code Ann. § 55-248.18 ("The landlord may enter the dwelling unit without consent in case of emergency. The landlord shall not abuse the right of access or use it to harass the tenant. Except in case of emergency or if it is impractical to do so, the landlord shall give the tenant notice of his intent to enter and may enter only at reasonable times. Unless impractical to do so, the landlord shall give the tenant at least 24-hours notice of routine maintenance to be performed that has not been requested by the tenant. If the tenant makes a request for maintenance, the landlord is not required to provide notice to the tenant."). "Although [the Paynes] owned the premises, the plaintiffs, as tenants, had

---

[7] I pause to reject specifically the Paynes' argument to avoid this count. The Paynes contend that, because it was the deputies who took the keys from Mr. Epperson at gun point, it is the deputies who "evicted" the Eppersons. This argument erroneously ignores the fact that, as alleged, the deputies were acting at the Paynes' direction. To accept the Paynes' argument would permit every landlord to hire armed assailants to remove tenants—whether or not they are in breach—and then escape all liability for unlawful eviction. That is unquestionably not the law.

- 12 -

the right of possession. Therefore, under the circumstances of the present case, [the Paynes] had no right to enter the premises without the plaintiffs' consent." Johnson, 465 S.E.2d at 817 (citing Hannan, 153 S.E.2d at 825)). Because they entered the property without Plaintiffs consent, Plaintiffs have adequately pled a cause of action for common-law trespass. See Kurpiel v. Hicks, 731 S.E.2d 921, 925 (Va. 2012) ("[T]o recover for trespass to land, a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land, and that was a direct result of some act committed by the defendant."). The Paynes' Motion to Dismiss will be denied in its entirety.

### C. DEPUTIES HUBBARD, MARTIN, AND MIKELS

Defendants Hubbard, Martin, and Mikels's ("the deputies") maintain their actions are protected by the doctrine of qualified immunity.

"Section 1983 of Title 42 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution of the laws of the United States. Nevertheless, a government official sued under § 1983 is entitled to invoke qualified immunity, which is more than a mere defense to liability; it is immunity from suit itself." Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). In addition to protecting officers whose conduct does not run afoul of the Constitution, "qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

When examining a claim of qualified immunity, the Court begins by "asking whether the facts, '[t]aken in the light most favorable to the [plaintiff],' show that 'the officer's conduct violated a constitutional right.' If the answer is no, 'that ends the matter, and the officer is entitled to immunity.'" Turmon v. Jordan, 405 F.3d 202, 204−05 (4th Cir. 2005) (quoting

- 13 -

Saucier v. Katz, 533 U.S. 194, 200−01 (2001)). In determining whether a constitutional violation occurred, the facts are to be viewed in the light most favorable to the injured party—in this case, the Eppersons. See Turmon v. Jordan, 405 F.3d 202, 204−05 (4th Cir. 2005) (quoting Saucier, 533 U.S. at 201). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established" at the time of the violation. Saucier, 533 U.S. at 201; Turmon, 405 F.3d at 205. A constitutional right is "clearly established" when "its contours [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). If the right is not "clearly established," the officer is entitled to immunity. See Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012). When considering the two-step Saucier analysis, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In the present case, taking the facts in the light most favorable to the Eppersons, the deputies entered the Eppersons' leased property without permission.[8] After entering the home through the garage without a warrant, they drew their guns on Mr. Epperson. They placed him under arrest and searched his person—all following an illegal entry into the home. They removed the keys from his pocket and gave the keys to the property to the Paynes—all without a court order or any legal authority to do so. They then removed Kyle Epperson from his home— at gunpoint. Again, this was done following an unauthorized and illegal entry into the home, and without probable cause that Kyle Epperson—a minor who was sick in bed—had violated any law. No reasonable person could say that, under these facts, Plaintiffs' right to due process

---

[8] As stated above, Plaintiffs have alleged that they were tenants. It is well established under Virginia law that tenants have the right to possession of their property. See Hannan, 153 S.E.2d at 830. The alleged landlords' permission is not sufficient when the landlord was without the authority to grant permission.

- 14 -

(Count I) or to be free from unreasonable searches and seizures (Count II) was not clearly established.

Moreover, the deputies' arguments in support of qualified immunity all rise and fall on accepting *their* version of the facts. They argue that they were unaware of the history of the property and that they asked Brinegar-Vipperman if they could assist the Paynes. Those arguments are not appropriate at the motion to dismiss stage. At this stage, the Court assumes Plaintiffs' version of the facts is true—specifically that, without a court order, the deputies assisted the Paynes in evicting them from their home. They did this despite the fact that Plaintiffs had a rental agreement with the Paynes that had not been breached. Under those facts, the deputies violated Plaintiffs' clearly established constitutional rights, as well as the rights afforded them under the laws of Virginia (namely, their property rights as tenants).

Likewise, the "advice of counsel" defense is inappropriate at the motion to dismiss stage. By its nature, it is a fact-intensive defense:

> Relevant factors include how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, whether complete information had been provided to the advising attorney(s), the prominence and competence of the attorney(s), and how soon after the advice was received the disputed action was taken.

V-1 Oil Co. v. Wyoming, 902 F.2d 1482, 1488–89 (10th Cir. 1990); see also Hollingsworth v. Hill, 110 F.3d 733, 740–41 (10th Cir. 1997); Buonocore v. Harris, 134 F.3d 245, 252–53 (4th Cir. 1998) (holding that reliance on counsel's advice is a factor in whether a defendants has demonstrated extraordinary circumstances, but is not alone enough). Most importantly, to rule on whether this defense excuses the deputies from all liability for their actions, the court would have to know what information was given to the attorney and what advice was rendered in return. It cannot be sufficient to say, "I spoke with an attorney, therefore I am protected."

Rather, it is vital to know that the attorney was given all relevant and accurate facts before rendering her legal opinion, and that the defendants followed that advice without deviation. It would be a scant defense to say, "I was advised not to do what I did, but I did it anyway." Contrary to the deputies' argument, the facts alleged in the Complaint do not establish the validity of the "advice of counsel" defense.

As a corollary argument, the deputies also contend that they lacked "knowledge of the law," which they contend is an "extraordinary circumstances" which may excuse the willful violation of an established constitutional right. See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). At this stage, the defense has not been established by the facts alleged in the Complaint. As the Supreme Court said, "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." Id. Here, on the facts Plaintiffs have alleged, the deputies should have known that—absent a court order following an unlawful detainer action—they had no authority to "assist" the Paynes in taking possession of the leased premises by force. The deputies should have known that the Constitution prohibited them from entering private property at gun point without a warrant or exigent circumstances. And the deputies should have known that placing Kyle Epperson in handcuffs with a gun in his face, absent probable cause, was not permitted. No reasonable officer in their position, and under the facts alleged in the Complaint, could have reasonably believed, or reasonably questioned, whether the deputies' actions were permitted. Accordingly, Plaintiffs have alleged a cause of action against the deputies for due process violations (Count I) and Fourth Amendment violations (Count II).

The deputies have also moved to dismiss Count IV (unlawful eviction) of the Complaint. For the reasons stated above regarding Brinegar-Vipperman's motion to dismiss Count IV, the deputies' motion should be granted. The statute under which Plaintiffs are proceeding only

authorizes recovery against "the landlord." Because the deputies do not fall under the statutory definition of "landlord," recovery may not be had against them under the applicable statute. Count IV should be dismissed against the deputies.

In the deputies' brief in support of their motion to dismiss, they asked the Court to "dismiss Count I, II, and IV against them." In their reply to Plaintiffs' opposition brief, they raised arguments for dismissing Counts V (trespass), VI (conversion), and VII (malicious prosecution). These Counts were addressed, for the first time, in the deputies' reply brief. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief . . . will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006). For this reason, I will not consider those arguments for dismissing Counts V, VI, and VII, and will deny the motion with respect to those Counts.

In summary, Plaintiffs have failed to state a claim against the deputies for unlawful eviction, and Count IV will be dismissed as to the deputies. Taking the facts in the light most favorable to Plaintiffs, the deputies violated Plaintiffs' clearly established constitutional rights, rights of which the deputies should have been aware. Qualified immunity does not compel dismissal of Counts I or II against the deputies. Because the deputies did not raise their arguments for dismissal of Count V, VI, and VII until their reply brief, those arguments are considered waived, and Counts V, VI, and VII should remain pending against the deputies.

## IV. CONCLUSION

Defendant Stephanie Brinegar-Vipperman is entitled to Eleventh Amendment immunity. Accordingly, all claims against her in her official capacity as Commonwealth's Attorney will be dismissed. Additionally, the claim of supervisory liability under § 1983, levied against her in her individual capacity, fails because Plaintiffs have not alleged that she was the supervisor of any party who allegedly violated Plaintiffs' constitutional rights. Finally, no claim will lie against

Brinegar-Vipperman for unlawful eviction because, under the statute, recovery is only permitted against the landlord. As Brinegar-Vipperman does not satisfy the statutory definition of landlord, that claim will be dismissed.

Defendants Calvin and Vickie Payne's motion to dismiss will be denied. Plaintiffs have adequately alleged they were tenants pursuant to an oral rental agreement. Absent a breach of that agreement or a court order pursuant to an unlawful detainer action, Plaintiffs were entitled to possession of the Ararat Highway property. By alleging that the Paynes forcibly removed Plaintiffs—at gunpoint—Plaintiffs have alleged a claim for unlawful eviction. Additionally, because they have alleged they were tenants and that the Paynes entered the property without permission, they have alleged a common-law claim of trespass against the Paynes.

Under the facts alleged in the Complaint, Deputies Hubbard, Martin, and Mikels are not entitled to qualified immunity. As alleged in the Complaint, the deputies's actions violated clearly established constitutional rights of which they should have been aware. They conducted an unlawful entry, search, and arrest, and dispossessed Plaintiffs of their property without due process. Because no defense has been established by the facts *Plaintiffs* have alleged, Counts I and II will not be dismissed. Like Brinegar-Vipperman, however, the deputies do not qualify as Plaintiffs' "landlord," and therefore the unlawful eviction claim against them fails. The deputies' arguments to dismiss Counts V, VI, and VII were waived because they failed to include them in their brief in support of their motion to dismiss.

Defendant Stephanie Brinegar-Vipperman will be dismissed from this action entirely. Because she is the only party named in Count III, that Count will be dismissed. Count IV will be dismissed as to Defendants Hubbard, Martin, and Mikels. All remaining counts have been adequately pled.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 30th day of March, 2017.

        s/Jackson L. Kiser
        SENIOR UNITED STATES DISTRICT JUDGE