CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 24 2022

JULIA C. DUDLEY, CLERK
BY:  s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TAMARA EPPERSON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:16-cv-00050 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DAN SMITH, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

In October 2015, Plaintiffs James and Tamara Epperson's home in Ararat, Virginia, was sold at a foreclosure auction. Early the next morning, sheriff's deputies forced entry into the home at the request of the home's new owner, Vickie Payne. Believing that his home was being broken into, James grabbed a shotgun. When deputies encountered James, cooler heads prevailed, and deputies arrested James and detained his teenage son, Kyle Epperson, who was home sick from school, without further incident. Deputies handcuffed both James and Kyle, removed them from the home, and turned the house (and all its contents) over to Vickie Payne. Aside from the foreclosure sale the day before, no other legal process had occurred.[1] Following this incident, Plaintiffs James, Tamara, Kyle, and Mason Epperson ("the Eppersons") sued Sheriff Dan Smith ("Sheriff Smith") for numerous federal and state-law claims, including trespass on a theory of vicarious liability.

---

[1] Historically, under Virginia law, the remedy for an owner who purchased a home at a foreclosure auction that the prior owner refuses to vacate, was to file an unlawful detainer action. *See Parrish v. Fed. Nat'l Mortg. Ass'n*, 787 S.E.2d 116, 121 (Va. 2016); *Johnson v. Goldberg*, 151 S.E.2d 368, 370 (Va. 1966). That action would provide a legal determination as to which party had rightful possession. *Parrish*, 787 S.E.2d at 121. In 2018, Virginia amended its detainer statute, Va. Code Ann. § 8.01-126(D)(4), to provide a mandatory 3-day notice prior to filing the detainer action in such circumstances. *See Wilson v. Town of Mt. Jackson*, No. 5:21-cv-55, 2022 WL 819531, at *8 n.3 (Mar. 17, 2022).

This matter is before the court on Sheriff Smith's motion for summary judgment on the Eppersons' trespass claim (Count V). (ECF No. 182.) Sheriff Smith contends that the Eppersons lacked a property interest in the home sufficient to maintain a trespass action against him. Alternatively, Sheriff Smith argues that because the trespass action was dismissed against his deputies, he cannot be liable on a theory of vicarious liability. For the reasons discussed below, the court is constrained to grant Sheriff Smith's motion.

## I.  BACKGROUND

In 1991, James and Tamara Epperson purchased a home at 4037 Ararat Highway in Ararat, Virginia. (*See* ECF No. 121-2.) In 2015, after facing financial difficulties, the Eppersons defaulted on their mortgage, and the bank foreclosed on their home. On October 19, 2015, Calvin and Vickie Payne (collectively "the Paynes") purchased the property at a foreclosure auction, signed a contract of sale, and made a down payment. (*See* ECF 121-7; ECF 121-8.)

After the sale, Vickie Payne called the Eppersons at the home she had just purchased. She left a voicemail informing them that she had purchased their home at the foreclosure sale and stated that "she had to get the keys to" it. (Dep. of James Epperson 10:15–19, July 27, 2017 [ECF No. 121-5].) James called her back and proposed that, if the Paynes allowed his family to stay on the property for 30 days, they would voluntarily vacate the home and the Paynes would not need to get a court order to remove them. (*Id.* at 10:20–23.)

Vickie Payne was noncommittal on the requested 30-day extension, but she was adamant that she needed the keys to the home. (*Id.* at 11:1–2.) She told James she had hoped to get the keys that afternoon but could not because of another engagement. (*Id.* at 11:2-5.) She asked to come to the house the next morning, but James explained that no one would be

home. (*Id.* at 11:7–12.) After some back and forth, James suggested that he call her the next day around lunchtime to discuss when he could hand over the keys, a proposal that "seemed to satisfy her." (*Id.* at 11:21–12:6.)

Despite their apparent agreement to defer further discussions until the following day, Vickie contacted Sheriff Smith to ask if she could get into the house. (Dep. of Vickie Payne 27:18–28:18, July 17, 2017 [ECF No. 113-10].) Sheriff Smith consulted with the Patrick County Commonwealth's Attorney, Stephanie Brinegar-Vipperman, about the extent of the Paynes' rights to the property following the foreclosure. Based on Brinegar-Vipperman's advice, Sheriff Smith informed Vickie that the house was hers and she could go in. (Dep. of Dan Smith 24:6–16, July 27, 2017 [ECF No. 121–11].) Vickie told Sheriff Smith that she "wanted to wait until the next day to do it, daylight hours, so forth." (*Id.* at 26:11–12.) Notwithstanding Vickie's request to wait until morning, Sheriff Smith sent a deputy to accompany the Paynes and gain access to the property that night.[2] (Dep. of Dustin Foley 11:15–12:21, Sep. 26, 2017 [ECF Nos. 101-7, 121-16].) When they knocked on the door at about 10:30 p.m., no one answered. (*Id.* at 20:14–21:14.) The group left the property and decided to return the next day. (*Id.* at 27:16–21.)

At around 8:30 a.m. on October 20, the Paynes returned to the property, accompanied this time by several deputies. (Dep. of Robert Coleman 19:13–20, Sep. 20, 2017 [ECF No. 121-17].) With the help of a locksmith, the deputies[3] entered the home's garage through a

---

[2] There is some suggestion that Vickie intimated to Sheriff Smith that the former owners were stealing from and/or damaging the property (*see, e.g.,* Smith Dep. 22:14–22), or that someone was staying at the property (Dep. of Dustin Foley 13:1–7, Sept. 26, 2017 [ECF No. 121-16]).

[3] The deputies who arrived with the Paynes had to leave the scene, but others came to replace them. (Coleman Dep. 19:19.)

locked entrance with their firearms drawn. (Dep. of Brian Hubbard 22:4–6, 23:9–10 July 31, 2017 [ECF No. 121-15].) One deputy saw James, inside the home and carrying a shotgun, through a glass door. (*Id.* at 25:12–15.) He yelled, "Sheriff's Office. Drop the gun." (*Id.* at 26:24–27:1.) James lowered his shotgun and opened the door for the deputies. (*Id.* at 32:8–13.) The deputies handcuffed and removed James and his son Kyle from the house. (*Id.* at 32:11–34:4, 38:15–39:3.) One of the deputies patted James down, took his keys from his pocket—including car keys and keys to other personal property—and gave them to Vickie, saying, "I guess these are yours." (James Dep. at 38:19–39:9.) Both James and Kyle fully cooperated with the officers. (*Id.* at 32:14–16, 37:24–39:3.)

Following this incident, the Eppersons filed suit against Defendants Sheriff Smith, Lt. Rob Coleman, Inv. Brian Hubbard, Inv. Danny Martin, and Inv. Terry Mikels (collectively "Defendants"), on October 19, 2016.[4] (*See* Compl. [ECF No. 1].) This matter is before the court on Sheriff Smith's motion for summary judgment on Plaintiffs' trespass claim. (ECF No. 182.) The court heard oral argument on the motion on May 26, 2022. The court has fully reviewed the record and the applicable law, and this motion is ripe for disposition.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

---

[4] Plaintiffs originally included the Paynes and Brinegar-Vipperman as defendants in the suit. The claims against those parties were dismissed. (*See* ECF No. 42 (dismissing Brinegar-Vipperman); ECF No. 64 (dismissing the Paynes). Additionally, several of the named defendants have been promoted, but the court refers to them by their alleged rank at the time of the incident that gives rise to this litigation.

*Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits'" filed by the parties. *Celotex*, 477 U.S. at 322 (quoting former Fed. R. Civ. P. 56(c)). Whether a fact is material depends on the relevant substantive law. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries its burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (cleaned up) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. But the nonmoving party must "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not . . . to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. Nat'l Cable Adv., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995). "The question at the summary judgment stage is not whether a jury is *sure* to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

## III.   ANALYSIS

Sheriff Smith argues that Plaintiffs cannot maintain a trespass action because they did not have an exclusive possessory interest in the property at the time of the alleged trespass. Because the Fourth Circuit has already determined that the Eppersons no longer had any property rights in the home when the sheriff's deputies entered on October 20, *see Epperson v. Smith*, 836 F. App'x 127, 130 (4th Cir. 2020) (per curiam), the court must grant Sheriff Smith's motion for summary judgment on the trespass claim.

On May 31, 2018, this court (through then-Senior U.S. District Judge Jackson L. Kiser) denied Defendants Smith and Coleman's motion for summary judgment on the Eppersons'

procedural due process claim, concluding that factual disputes precluded a decision of whether either was entitled to qualified immunity. (*See* Mem. Op. pgs. 1–23, May 31, 2018 [ECF No. 149].) Following an interlocutory appeal the Fourth Circuit reversed that decision. *Id.* at 128, 131. The court reasoned that the sheriff's deputies were entitled to summary judgment on the procedural due process claim because their "property rights were extinguished once their home was sold at foreclosure auction . . . ." *Epperson*, 836 F. App'x at 130.

This conclusion necessarily resolves the Eppersons' trespass claim. A plaintiff must have a possessory interest in the relevant property at the time of the unauthorized entry to bring a trespass claim. *See Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994). And if the Eppersons lacked a property interest in the home for purposes of a procedural due process claim when the sheriff's deputies entered, then they must also have lacked a property interest for purposes of a trespass claim.

Law of the case "applies both to questions actually decided as well as to those decided by necessary implication." *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. U.S., LLC*, 469 F. Supp. 3d 505, 524 (E.D. Va. 2020) (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)). And the doctrine is at its apex when a superior court has decided the issue in question. *United States v. Lentz*, 384 F. Supp. 2d 934, 938–39 (E.D. Va. 2005). "This so-called 'mandate rule' is a 'more powerful version of the law of the case doctrine and is based on the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system.'" *Id.* at 939 (quoting *Invention Submission Corp. v. Dudas,* 413 F.3d 411, 414 (4th Cir.2005)). In this posture, "an inferior court generally may not consider questions that the mandate of a superior court has laid to rest." *Id.* That said, the

Fourth Circuit has handed down three exceptions to this general rule: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (citations omitted). Neither the first nor the second exception is applicable because there has been no trial and because there has been no change to the relevant law.

The third exception is similarly inapplicable because the Fourth Circuit's decision is not "clearly erroneous." Citing authority, the court concluded that the foreclosure sale extinguished the Eppersons' property interest in the home. *See Epperson*, 836 F. App'x at 130. Importantly, it also explicitly considered the post-sale phone call between James and Vickie, concluding that this communication did not allow the Eppersons to retain any property interest in the home. *See id.* Although this court might have reached a different conclusion if it had addressed this issue as an original matter,[5] the law of the case controls. The Fourth Circuit requires a prior decision to "strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish. It must be dead wrong." *U.S. Tobacco*, 899 F.3d at 258 (citations omitted). The Fourth Circuit's mandate necessarily implies that the Eppersons did not have any property right at the time of the deputies' alleged trespass. They thus cannot maintain a trespass action against the deputies, and therefore against Sheriff Smith on a theory of *respondeat superior*, and this court must grant Sheriff Smith's summary judgment motion.

---

[5] As an original matter, this court might have determined that the phone call between James and Vickie created a tenancy at will, giving the Eppersons a possessory interest in the property. Under Virginia law, owners who remain on the premises after a foreclosure become tenants at sufferance. *See Warehouse Distr., Inc. v. Prudential Storage & Van Corp.*, 161 S.E.2d 86, 89 (Va. 1968). And although a tenancy at sufferance is only possession "without right of any kind . . . ," *id.* at 89, the new owner can convert the leasehold into a tenancy at will if she allows the former owners to stay for a short period. *See Eason v. Rose*, 32 S.E.2d 66, 68–69 (Va. 1944). When this happens, the tenant acquires a revocable possessory interest in the property. *See id.*

## IV.   CONCLUSION

Given the Fourth Circuit's conclusion that the Eppersons lacked a property interest in their home that would be sufficient to maintain a procedural due process claim, the court must grant Sheriff Smith's motion for summary judgment as to Plaintiffs' trespass claim (Count V) (ECF No. 182).

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 23rd day of June, 2022.


*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE